Lundberg Stratton, J.,
dissenting.
*603 {¶ 14} I respectfully dissent. Because United Rentals, Inc. (“URI”) bore the ultimate responsibility for the risk of loss, I believe that its “fronting policy” was self-insurance in the practical sense. Therefore, we should apply the rationale of Grange Mut. Cas. Co. v. Refiners Transport & Terminal Corp. (1986), 21 Ohio St.3d 47, 21 OBR 331, 487 N.E.2d 310, and reverse the judgment of the court of appeals.
{¶ 15} The majority concludes in a two-sentence analysis: “URI and USF & G entered into an agreement, which is titled and referred to throughout as a commercial insurance policy. * * * Thus, URI was insured by USF & G.” But a closer look at the agreement and the relationship between the parties discloses an unconventional business arrangement that is atypical of the usual insurer-insured relationship.
{¶ 16} URI is an international corporation that owns more than 500,000 rental items, including numerous motor vehicles, which it must adequately insure from loss. Based in part on the size of its business and the enormous cost of insurance, URI selected a “fronting policy” as a means of risk management. The term “fronting” is an insurance term indicating that an entity is renting an insurance company’s licensing and filing capabilities. McCollum v. Continental Ins. Co. (Apr. 9, 1993), Lucas App. No. L-92-141, 1993 WL 382455, *3.
{¶ 17} Large businesses that operate in multiple states and/or countries commonly use an arrangement called a “fronting policy” or “fronting program” in which the business pays a greatly discounted premium to an insurance company with insurance licensing and filing capabilities in particular states. In exchange, the company receives an insurance policy that complies with the financial-responsibility laws of each state in which the business is required to maintain proof of financial responsibility. See Mark W. Flory & Angela Lui Walsh, Know Thy Self-Insurance (and Thy Primary and Excess Insurance) (2001), 36 Tort & Ins.L.J. 1005, 1006-1007. The business bears all the risk because it has a deductible that matches the policy’s limits while merely using the insurer’s licensing and filing capabilities. Here, URI had $1 million of coverage, but agreed to be responsible for all claims. The insurer would never have to pay a claim. This approach is beneficial and cost-effective for a large company such as URI because it permits the company, for all practical purposes, to self-insure losses up to the amount of the deductible without having to meet the formal legal requirements for qualifying as a self-insurer in jurisdictions where it does business. Therefore, a fronting policy differs from the traditional insurance policy.
{¶ 18} We have held that the uninsured-motorist provisions of R.C. 3937.18 do not apply to self-insurers. Grange Mut. Cas. Co. v. Refiners Transport & Terminal Corp., 21 Ohio St.3d 47, 21 OBR 331, 487 N.E.2d 310, syllabus. This *604 principle should be applied to a fronting policy. However, the majority distinguishes Grange because in that case, Refiners Transport & Terminal Corp. had purchased a financial-responsibility bond as proof of its financial responsibility under R.C. 4509.45(A)(3), whereas URI had an insurance policy. But as the dissenting judge below stated, “[t]hat is a distinction without meaning.” I agree. Both are merely tools that prove financial responsibility. Both are forms of “self-insurance” in that the company, not the surety or the insurance company, is responsible for payment of any loss.
{¶ 19} The majority ignores the fact that the court’s analysis of self-insurance in Grange focused on who bore the ultimate responsibility for the risk of loss. The court concluded that, whether a bond principal or a self-insurer, for purposes of the uninsured- and underinsured-motorists provisions of R.C. 3937.18, Refiners was self-insured “in the practical sense” because it was “ultimately responsible” for payment of claims. (Emphasis added.) Id., 21 Ohio St.3d at 49, 21 OBR 331, 487 N.E.2d 310.
{¶ 20} Technically, USF & G issued an insurance policy to URI that satisfied URI’s proof of financial responsibility under R.C. 4509.45(A). USF & G appeared to be the insurer, yet under the terms of the agreement, USF & G bore no obligation to defend or settle claims and no risk of loss. For all practical purposes, URI was the primary insurer ultimately responsible to a claimant. Consequently, it logically follows that, with no transfer of risk from an insured to an insurer, there is no need for an offer of, or a decision to accept or reject, UM/UIM coverage. As we said in Grange, if R.C. 3937.18 applied to self-insurers, “it would result in the absurd ‘situation where one has the right to reject an offer of insurance to one’s self * * *.’ ” Id. at 49, 21 OBR 331, 487 N.E.2d 310, quoting the court below.
{¶ 21} A fronting policy as the functional equivalent of self-insurance is not a novel concept. In Chicago Ins. Co. v. Travelers Ins. Co. (Ky.App.1997), 967 S.W.2d 35, the court described a Travelers policy issued to Walgreen Company as essentially a “fronting policy” by which Walgreen was self-insured because the policy had matching $1 million deductible and coverage limits. In Air Liquide Am. Corp. v. Continental Cas. Co. (C.A.10, 2000), 217 F.3d 1272, 1274, the court concluded that a CIGNA policy issued to Air Liquide was not a typical liability policy because the company’s deductible matched the policy limits. Air Liquide was responsible for its own losses. In Playtex FP, Inc. v. Columbia Cas. Co. (Del.Super.1991), 609 A.2d 1087, 1091, the court acknowledged that the company used a fronting agreement to accomplish self-insurance. See, also, Tribune Co. v. Allstate Ins. Co. (1999), 306 Ill.App.3d 779, 782, 239 Ill.Dec. 818, 715 N.E.2d 263.
{¶ 22} The majority’s analysis focuses on the agreement’s label. But the substance of the agreement between URI and USF & G indicates that it was *605 merely a fronting policy that is a form of self-insurance in the practical sense, with URI ultimately responsible for payment of claims. Consequently, the uninsured- and underinsured-motorist provisions of former R.C. 3937.18 do not apply.
Lowe, Eklund, Wakefield & Mulvihill Co., L.P.A., and Mark L. Wakefield, for appellee.
Davis & Young, Thomas W. Wright, Richard M. Garner, and Patrick M. Roche, for appellants United States Fidelity & Guaranty Company and St. Paul Fire & Marine Insurance Company.
Janik & Dorman, Steven G. Janik and Matthew J. Grimm, urging reversal for amicus curiae Member Companies of the American International Group, Inc.
Connelly, Jackson & Collier, L.L.P., and Anthony E. Turley, urging affirmance for amicus curiae Ohio Academy of Trial Lawyers.
{¶ 23} I dissent and would reverse the judgment of the court of appeals.
O’Connor and O’Donnell, JJ., concur in the foregoing dissenting opinion.